IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-166-2-BR
No. 5:18-CV-577-BR

| | | |
|---|---|---|
| GEORGE LINCOLN STANLEY, IV, | ) | |
| | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

This matter is before the court on the government's motion for summary judgment on petitioner's 28 U.S.C. § 2255 motion. (DE # 421.) Petitioner filed a response in opposition to the government's motion, (DE # 442), with a supporting declaration, (DE # 444). Subsequently, he filed another § 2255 motion. (DE # 445.)

## I. BACKGROUND

In 2015, a jury convicted petitioner and his co-defendant Akin Sean El Precise Bey each of one count of conspiracy to commit kidnapping and one count of kidnapping; Bey was also convicted of being a felon in possession of a firearm and ammunition. The court sentenced petitioner to life imprisonment. Petitioner appealed the court's denial of his motion for severance and the court's application of several sentencing guideline enhancements. The Fourth Circuit Court of Appeals affirmed. (DE # 357.) Subsequently, the appellate court denied petitioner's motion for appointment of counsel and for an extension of time to file a petition for a writ of certiorari. (DE # 368.)

In December 2018, petitioner filed his initial § 2255 motion. (DE # 376.) He alleges three claims based on ineffective assistance of counsel. On the government's motion, the court dismissed all claims except petitioner's first and directed the government to file an answer.

(3/26/20 Order, DE # 410.) The government filed an answer, (DE # 417), and later the instant motion for summary judgment. After the motion for summary judgment became ripe, petitioner filed another § 2255 motion.

## II. DISCUSSION

### A. Government's Motion for Summary Judgment on Claim One

"[S]ummary judgment provides a viable mechanism for disposing of even non-frivolous habeas petitions in the proper case." United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (citation omitted). "[A] court may grant summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, with any permissible inferences drawn from the underlying facts to be viewed in the light most favorable to the party opposing the motion." Id. (citations, internal quotation marks, and alterations omitted).

In this case, petitioner's first and only surviving claim alleges ineffective assistance of counsel during the plea-bargaining process. Specifically, petitioner alleges that trial counsel failed to negotiate on petitioner's behalf a plea agreement whereby he would testify against his co-defendant and provide other substantial assistance in exchange for the government seeking a downward departure in his case. (See Mot., DE # 376, at 9-10.) "To establish a claim of ineffective assistance of counsel, a defendant must show (1) that 'counsel's performance was deficient,' and (2) that 'the deficient performance prejudiced the defense.'" United States v. Rangel, 781 F.3d 736, 742 (4th Cir. 2015) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). A criminal defendant has the right to effective assistance of counsel during the plea-bargaining process. Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). "While there is

2

no constitutional right to a plea agreement, and the decision to initiate plea negotiations is ordinarily a strategic decision within the purview of defense counsel, counsel is still required to be a reasonably effective advocate regarding the decision to seek a plea bargain." United States v. Lopez, 570 F. App'x 291, 292 (4th Cir. 2014) (citations and internal quotation marks omitted).

Relevant to this claim, petitioner declares the following.

> 2.) Prior to trial and shortly after I first met with my attorney, Rosemary Godwin, she told me that I would get a life sentence if I proceeded to trial and lost. At that time, I would have accepted pretty much any kind of a deal that would have enabled me to avoid spending the rest of my life in prison.
> 3.) I am not aware of any efforts by Attorney Godwin to negotiate any kind of a plea agreement on my behalf.

(Stanley Decl., DE # 390-1.)

> 25.) Mr. Stanley was prejudiced from the unprofessional omissions of counsel . . . because absent said omissions, there is a reasonable probability that the outcome of his plea process would have been different. More specifically, but for counsel's unprofessional omissions there is a reasonable probability that counsel could have obtained a plea agreement whereby Mr. Stanley would have testified for the government against his codefendant and would have provided other substantial assistance to the government in exchange for a downward departure in his sentence.
> 26.) Mr. Stanley would have, in fact, testified for the government against his codefendant and would have provided other substantial assistance to the government in exchange for a plea agreement providing for a downward departure in his sentence.

(Stanley Decl., DE # 444 (quoting Mot., DE # 376, at 10).) Other than the legal conclusion that petitioner suffered prejudice as a result of counsel's conduct, the court accepts these sworn statements as true. See United States v. McIver, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." (citations and footnote omitted)); United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002) ("The role of the district court, therefore, is to distinguish opinion testimony

3

that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion.").

Petitioner's trial counsel Godwin declares in relevant part:

> 5. During my very first visits with Mr. Stanley, he advised he anticipated proceeding to a trial by jury on his charges. I advised Mr. Stanley we needed to review the evidence against him and determine whether a trial or a negotiated plea would be in his best interest. Mr. Stanley told me he believed his offense conduct was so severe that he was going to serve the rest of his life in prison with or without a plea agreement. I explained to Mr. Stanley the potential benefits of a "cooperation plea agreement" through which he could cooperate against his codefendants, and provide further information about any other criminal activity of which he had knowledge, in an effort to earn a reduced sentence by providing substantial assistance to the government. Mr. Stanley told me that he would never cooperate with the government against anyone for any reason. I advised Mr. Stanley he could plead guilty without the benefit of a cooperation plea agreement and still receive a three level reduction in his total offense level for acceptance of responsibility.
> 6. I continued to meet with Mr. Stanley to review discovery and discuss his options. I advised Mr. Stanley that based on the government's evidence, I believed a jury would find him guilty and his guideline range would probably be life without parole in the Bureau of Prisons. Mr. Stanley told me he knew he would be convicted and he was preparing himself for a life sentence in a United States Penitentiary. Mr. Stanley advised he intended to go to trial and make the government work to convict him.
> 7. Throughout my representation of Mr. Stanley, I discussed the option of plea negotiations and the possible benefits of cooperation. Mr. Stanley remained steadfast in his refusal to authorize me to engage in any plea negotiations on his behalf. . . .
>
> . . . .
>
> 9. During my representation of Mr. Stanley, I acted in accord with his directives regarding his desire to proceed to trial rather than attempt to negotiate a cooperation plea agreement, or any other plea agreement. Mr. Stanley also declined to enter an open guilty plea even though I explained the benefits of the three level reduction for acceptance of responsibility.

(Godwin Aff., DE # 424-1.)

Petitioner's declarations and trial counsel's affidavit are not contradictory, and therefore, there is not a genuine issue of material fact. Importantly, petitioner and counsel agree that counsel did not undertake to negotiate a plea agreement on petitioner's behalf, with the reason

4

being petitioner refused to authorize her to engage in any plea negotiations—a fact petitioner does not deny. Also, petitioner does not deny that he told counsel he intended to go trial or that counsel provided him advice about entering an open plea. Furthermore, petitioner does not state that he informed trial counsel that he would have accepted a plea deal; he would have testified against his co-defendant; or he would have provided other assistance to the government. Based on the undisputed facts, the court concludes trial counsel did not perform deficiently in the plea-bargaining process.[1] As such, the government is entitled to summary judgment on petitioner's first claim.

### B. Petitioner's Second § 2255 Motion

In his second § 2255 motion, petitioner alleges four additional habeas corpus claims. (See Mot., DE # 445, at 4-8; Mem., DE # 445-1, at 5-43.) Because petitioner filed this motion more than 21 days after the government served its answer, he could not supplement his initial § 2255 motion to assert these additional claims as a matter of course. See Fed. R. Civ. P. 15(a)(1)(B); United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) ("[C]ourts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion." (citations omitted)); Brown v. United States, No. 2:16-CR-0122-DCN-6, 2020 WL 4226710, at *7 (D.S.C. July 23, 2020) ("[C]ourts considering motions to supplement § 2255 petitions have generally defaulted to the general amendment procedure provided by Federal Rule of Procedure 15." (citing Pittman, 209 F.3d at 317; Scott v. United States, 2018 WL 1545586, at *12 (E.D. Va. Mar. 29, 2018))). Rather, in the absence of the government's written consent, petitioner must have leave of court to supplement his § 2255 motion. See Fed. R. Civ. P. 15(a)(2), (d).

---

[1] The court does not reach the government's alternative argument that, presuming trial counsel acted deficiently, petitioner cannot show he was prejudiced thereby.

Petitioner has not requested leave. Nonetheless, the court considers whether it should be granted. Although the court is obligated to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), supplementation may be denied in the case of "bad faith, undue prejudice to the opposing party, or futility," Pittman, 209 F.3d at 317 (citations omitted).

Supplementation is "futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) (citation omitted). In making such an assessment, the court applies the same standard it would in reviewing a motion to dismiss based on the failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) ("[I]n recent years, we have made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny."). That rule "'tests the legal sufficiency of the complaint.' In evaluating a Rule 12(b)(6) motion, the court determines whether, 'accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff,' the complaint states a claim to relief that is plausible on its face." Cohen v. Gruber, 855 F. App'x 139, 140 (4th Cir. 2021) (citations and alteration omitted).

1. *Sentencing disparity claim*

First, petitioner attempts to challenge his life sentence on the ground that it is impermissibly disparate under 18 U.S.C. § 3553(a)(6) when compared to co-defendants Hubert Dixon's and Judson Debnam's sentences of 47 months and 48 months imprisonment, respectively.[2] (Mem., DE # 445-1, at 2.) He also claims trial and appellate counsel were ineffective in failing to raise the issue. (Id.)

---

[2] According to petitioner, Debnam received a sentence of 60 months imprisonment. (Mem., DE # 445-1, at 2.) However, he received a sentence of 48 months imprisonment. (Am. J., DE # 330, at 2.)

In imposing a sentence, the court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other factors. 18 U.S.C. § 3553(a)(6). However, this factor "is concerned with whether a particular defendant's sentence creates a sentencing disparity with all other similarly situated federal defendants. In other words, the kind of disparity with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) *rather than among defendants to a single case*." United States v. Pyles, 482 F.3d 282, 290 (4th Cir. 2007) (emphasis added) (citation and internal quotation marks omitted), vacated on other grounds, 552 U.S. 1089 (2008). Furthermore, although Dixon and Debnam played roles in the subject kidnapping and conspiracy and received sentences much lower than petitioner's, they pled guilty (pursuant to plea agreements) to offenses different from petitioner, cooperated, and testified against petitioner and Bey. Accordingly, for sentencing purposes, they are not similarly situated to petitioner. See United States v. Susi, 674 F.3d 278, 288 (4th Cir. 2012) ("§ 3553(a)(6)'s avoidance of unwarranted sentencing disparities does not require courts to sentence similarly individuals who go to trial and those who plead guilty."). Petitioner's sentence does not violate § 3553(a)(6), and therefore, counsel were not ineffective in raising this meritless issue at trial or on appeal, see Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("Failure to raise a meritless argument can never amount to ineffective assistance."). Because petitioner cannot state a habeas corpus claim based on his sentence violating § 3553(a)(6) or an ineffective assistance of counsel claim for failure to raise the issue, allowing petitioner to supplement his § 2255 motion to allege this claim would be futile.

### 2. *Insufficiency of evidence claim*

Petitioner next claims there was insufficient evidence to convict him. Specifically, he alleges "there was insufficient evidence as to the following elements:" "transportation of the victim across state lines;" his knowingly and willfully kidnapping or carrying away a person; his knowing and willful membership in the conspiracy; and "the overt act of kidnapping for ransom." (Mem., DE # 445-1, at 3.) He also faults trial and appellate counsel for failing to raise this issue. (Id.)

At the outset, the court recognizes that transportation of the victim across state lines is not necessarily a required element of the substantive offense of kidnapping. "To establish a violation of [the federal kidnapping statute, 18 U.S.C.] § 1201(a), the government must prove that: 1) the victim was seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away; 2) the victim was held; and 3) federal jurisdiction." United States v. Wills, 234 F.3d 174, 177 (4th Cir. 2000) (footnote omitted). Although the jurisdictional element may be satisfied by the willful transportation of the victim across state lines, it may also be satisfied by the defendant traveling in interstate or foreign commerce or by the defendant using the mail or any interstate or foreign instrumentality in committing, or in furtherance of, the kidnapping. See 18 U.S.C. § 1201(a)(1) (criminalizing kidnapping "when the person is willfully transported in interstate or foreign commerce . . . or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense"). Accordingly, the superseding indictment against petitioner was not required to allege that the victim was transported across state lines nor was the jury required find that the government had proven that element beyond a reasonable

8

doubt. Rather, it alleged, and the jury found beyond a reasonable doubt, that in committing or in furtherance of the commission of the kidnapping, petitioner used a means, facility, or instrumentality of interstate or foreign commerce. (See Sup. Ind., DE # 46, at 2 (kidnapping charged in Count Two); 12/7/15 Tr., DE # 346, at 28-30 (jury instructions on Count Two).)

Next, petitioner appears to contend because he did not put the victim in the car or drive the car in which the victim was transported, there was insufficient evidence that he knowingly and willfully kidnapped or carried away the victim. (See Mem., DE # 445-1, at 39 ("Bey put the guy in the back seat of the BMW and put a blanket over him and the victim and Bey drove in the BMW. Stanley and Dixon drove the Honda."), 40 ("Bey places Sidbury in the BMW before leaving the house not Stanley as stated by Dixon.").) It is important to note that petitioner along with his co-defendants was charged with, and the jury was instructed on, aiding and abetting kidnapping. (See Sup. Ind., DE # 46, at 2; 12/7/15 Tr., DE # 346, at 28-30.) Therefore, he may be held responsible for co-defendant Bey's acts, including co-defendant Bey's placing the victim in the car and carrying him to another location. See Rosemond v. United States, 572 U.S. 65, 70 (2014) ("[The federal aiding and abetting statute, 18 U.S.C.] § 2 reflects a centuries-old view of culpability: that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission." (citation omitted)).

Petitioner attempts to challenge his conspiracy conviction on the ground that there was insufficient evidence that he knowingly and willfully became a member of the conspiracy. (Mem., DE # 445-1, at 36.) According to petitioner, he never agreed to kidnap the victim, all the co-defendants did not know each other, and the plan was to rob the victim when he arrived home. (Id. at 37-40.) "To uphold a conspiracy conviction, there need only be a showing that

9

the defendant knew of the conspiracy's purpose and some action indicating his participation. These elements can be shown by circumstantial evidence such as his relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Landersman, 886 F.3d 393, 406 (4th Cir. 2018) (citation and internal quotation marks omitted). "[O]ne may become a member of the conspiracy without full knowledge of all of its details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, . . . even though he played only a minor part." United States v. Roberts, 881 F.2d 95, 101 (4th Cir. 1989). A defendant may be a member of a conspiracy without knowing all its members. United States v. Nunez, 432 F.3d 573, 578 (4th Cir. 2005). Additionally, "a defendant who has joined a conspiracy continues to violate the law through every moment of the conspiracy's existence, and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot." Smith v. United States, 568 U.S. 106, 111 (2013) (citations, alteration, and internal quotation marks omitted)). Here, there is more than sufficient evidence, both direct and circumstantial, of petitioner's membership in the conspiracy.

Finally, petitioner contends there was insufficient evidence of "the overt act of kidnapping for ransom." (Mem., DE # 445-1, at 36.) For the conspiracy offense, although the government must prove beyond a reasonable doubt that an overt act in furtherance of the agreement to commit the kidnapping was committed, it was not required to prove a ransom was demanded or collected. See United States v. Seau, 850 F.2d 690 (4th Cir. 1988) (table) (recognizing that conspiracy to commit kidnapping requires "an agreement among the conspirators to do something which the law prohibits[, that is, kidnapping]; knowing and willing

10

participation by the defendants in the agreement; and an overt act by the defendants in furtherance of the agreement" (citation omitted)). The superseding indictment alleged that the following overt acts, among others, were committed in this district: "carried away the victim in a motor vehicle, and used a cellular phone to make a ransom demand." (Sup. Ind., DE # 46, at 2.) The government could have proven either one of these acts was committed. Furthermore, for a person to be guilty of kidnapping (or conspiracy to commit kidnapping), the purpose of the charged kidnapping does not have to be ransom; it may be reward or any other reason which benefits the defendant. See United States v. Healy, 376 U.S. 75, 81 (1964) (holding a victim "for ransom, reward or otherwise" under § 1201 encompasses holding a victim for any reason which was of benefit to the defendant); United States v. Childress, 26 F.3d 498, 503 (4th Cir. 1994) (stating that kidnapping need not be performed for pecuniary gain; "ransom or otherwise" element is satisfied if "the defendant acted for any reason which would in any way be of benefit").

Because petitioner's allegations do not state a claim for insufficient evidence as to either of his convictions, trial and appellate counsel did not act deficiently in failing to raise the issue, and allowing petitioner to supplement his § 2255 motion to allege this claim would be futile.

    3.    *Right to confront witness claim*

Petitioner also seeks to challenge the admission of Detective Mendez's testimony about what the victim told him. (Mem., DE # 445-1, at 42.) Prior to trial, the government filed a motion seeking a preliminary ruling regarding the admissibility of the victim's statements to Detective Mendez, among other things. (DE # 192, at 2-3.) Trial counsel objected based on hearsay. (11/30/15 Tr., DE # 341, at 21.) The court overruled the objection and allowed the

11

admission of that evidence.    (Id. at 22.)

      At trial, Detective Mendez testified that he was the first law enforcement officer to locate the victim after he had been kidnapped and discovered the victim severely beaten in his own vehicle.    (See 12/1/15 Tr., DE # 331, at 69-70.)    He described the victim as "very nervous" and stated that the victim was stuttering and crying.    (Id. at 94.)    He asked the victim "where he had been and who had done this to him and if they were still in the area."    (Id. at 91.)    In response, the victim told him five black, armed, masked men, who spoke with New York accents, were in his home; they beat and tortured him and demanded money; they transported him to what he believed was a storage unit; he believed they had just fled on foot from the area where he was found; and he was barely able to walk but was able to crawl into the driver's seat of his car and begin driving.    (Id. at 91-93.)    The victim did not testify.    Petitioner claims that the admission of the victim's statements to Detective Mendez violated his Sixth Amendment right of confrontation and that appellate counsel was ineffective for failing to raise the issue. (Mem., DE # 445-1, at 42.)

      The victim's statements about which Detective Mendez testified were present sense impressions or excited utterances and therefore were admissible as an exception to the hearsay rule under Federal Rule of Evidence 803(1) or 803(2).    See United States v. Jackson, 124 F.3d 607, 618 (4th Cir. 1997).    Notwithstanding any exception to the hearsay rule, the Sixth Amendment's Confrontation Clause "bars the admission of 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'"    United States v. Dargan, 738 F.3d 643, 650 (4th Cir. 2013) (quoting Crawford v. Washington, 541 U.S. 36, 53-54 (2004)).    "Evidence implicates the

12

Confrontation Clause only if it constitutes a testimonial statement-that is, a statement made with 'a primary purpose of creating an out-of-court substitute for trial testimony.'" United States v. Reed, 780 F.3d 260, 269 (4th Cir. 2015) (quoting Michigan v. Bryant, 562 U.S. 344, 358 (2011)). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, 547 U.S. 813, 822 (2006). In determining an interrogation's primary purpose, the court should "objectively evaluat[e] the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs." Bryant, 562 U.S. at 370.

Here, Detective Mendez, the first responder, was confronted with a badly injured victim, who needed immediate medical assistance. They were on a non-lit, dead-end, dirt road at nearly 11:00 P.M. (12/1/15 Tr., DE # 331, at 66-67.) He needed to determine whether any perpetrators might still be in the area for the safety of himself and the other responding officers, medical personnel, and the victim. Cf. Bryant, 562 U.S. at 376 ("The questions [police] asked—'what had happened, who had shot him, and where the shooting had occurred'—were the exact type of questions necessary to allow the police to assess the situation, the threat to their own safety, and possible danger to the potential victim and to the public, including to allow them to ascertain whether they would be encountering a violent felon." (citations, footnote, and most internal quotation marks omitted)). The statements the victim made to the detective were made to assist police in addressing an ongoing emergency, and thus, they are nontestimonial and do not implicate the Confrontation Clause. Appellate counsel was not deficient in failing to raise this meritless issue. Because petitioner does not state a claim for violation of the Confrontation

Clause or ineffective assistance of appellate counsel for failing to raise the issue, allowing petitioner to supplement his § 2255 motion to allege this claim would be futile.

    4.  *Filing of petition for writ of certiorari claim*

Lastly, petitioner claims appellate counsel failed to timely notify him of his right to file a petition for a writ of certiorari and failed to notify him of the appellate court's adverse decision. (Mem., DE # 445-1, at 4, 43.) Also, he claims that he requested counsel to file such a petition. (Id. at 43.) These allegations, although made under penalty of perjury, (id. at 44), are belied by the record on appeal.

The Fourth Circuit Court of Appeals issued its decision on 18 October 2017. In his 4 December 2017 motion to recall the mandate and amend judgment, petitioner stated that shortly after new appellate counsel, Ruth A. Levy, was appointed, he received "a[] letter stating that the court issued a ruling on October 18, 2017 affirming [his] conviction and sentence." United States v. Stanley, No. 16-4364 (4th Cir.), ECF No. 90. On 8 December 2017, appellate counsel Levy filed a motion to withdraw, representing therein that "[a] certiorari petition to the United States Supreme Court would be frivolous" and requesting that "she be relieved of the responsibility of filing a petition for writ of certiorari." Id., ECF No. 96. In response, petitioner filed a motion for appointment of counsel and for an extension of time to file a petition for a writ of certiorari. Id., ECF No. 99. In that motion, he stated that Levy had notified him by letter of his right to file such a petition, which he received on 15 December 2017. Id. The Fourth Circuit Court of Appeals denied petitioner's motion and allowed Levy's motion to withdraw. Id., ECF No. 101. Under the circumstances, Levy had no further obligation to petitioner, see 4th Cir. Loc. R. 46(d) ("If appellant requests that a petition for a writ of certiorari

be filed but counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw with the Court of Appeals."); Plan of U.S. Ct. of Appeals for Fourth Cir. in Implementation of the Criminal Justice Act, Pt. V, § 2, https://www.ca4.uscourts.gov/information-for/appointed-counsel (follow link) (same), and she did not act deficiently. Therefore, allowing petitioner to supplement his § 2255 motion to allege this claim would be futile.

### III. CONCLUSION

The government's motion for summary judgment is ALLOWED. Petitioner's § 2255 motions are DISMISSED WITH PREJUDICE. The court finds that petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability is DENIED. The Clerk is DIRECTED to enter judgment and close this case.

This 13 January 2022.

_____
W. Earl Britt
Senior U.S. District Judge